IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 18-cr-22 |
| | ) | Civil Case No. 23-cv-587 |
| CORNELL DEVORE RHYMES, | ) | |
| Petitioner. | ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Petitioner Cornell DeVore Rhymes's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.

Petitioner, co-conspirator Justin Robinson (also known as "Byrd"), and others were accused of sex trafficking a young woman, M.M., and a minor girl, M.B., during the summer of 2017. Petitioner was accused of maintaining control over M.M., taking away her personal phone, determining what sex acts she would perform, and deciding when she would sleep. It was also alleged he supplied M.M. with cocaine knowing she was addicted and took all the earnings M.M. made through commercial sex acts. M.M. escaped from Petitioner's control and reported what occurred to the Fairfax County police. Byrd was accused of controlling M.B.

Petitioner was indicted in January 2018. A superseding indictment from May 2018 charge Petitioner with Conspiracy to

1

Commit Sex Trafficking (Count I), Benefiting from Participation in a Sex Trafficking Venture (Count II), Sex Trafficking by Force, Fraud, and Coercion (Count III), and Possession of a Firearm by a Prohibited Person (Count IV). In July 2018, Petitioner pled guilty to Count IV. At trial in November 2018, Petitioner was convicted by a jury of Counts I and III. Petitioner was sentenced to 180 months for each of Counts I and III and 60 months on Count IV, to run concurrently with each other. On appeal, the Fourth Circuit affirmed his convictions.

To state a claim for relief under § 2255, a petitioner must prove: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the Court was without jurisdiction to impose such a sentence; or (3) that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

Petitioner's motion rests on ineffective assistance of counsel claims. Specifically, Petitioner claims that (1) his counsel misinformed him about the mandatory minimum sentence for his charges, (2) his counsel made unfulfilled promises to the jury in his opening statement, (3) his counsel failed to investigate and call a crucial alibi witness at trial, and (4) his counsel failed to properly investigate and present M.M.'s Facebook messages.

For a sentence to be vacated based on ineffective assistance of counsel, a petitioner must prove both (1) deficient performance and (2) prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). If a petitioner fails to satisfy one prong of the Strickland test, it is not necessary for the Court to evaluate the other prong. United States v. Roane, 378 F.3d 382, 408 (4th Cir. 2004). To prove deficient performance, the errors made by counsel must have been "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness," as defined by "prevailing professional norms." Id. at 687-88.

To demonstrate prejudice, counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To show a reasonable probability, "[t]he likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011) (citing Strickland, 466 U.S. at 693).

3

Petitioner first claims that counsel misinformed him about the mandatory minimum sentence for his charges, which he claims affected the plea negotiations. The Supreme Court has held that a defendant's Sixth Amendment right to counsel extends to the plea-bargaining process. Lafler v. Cooper, 566 U.S. 156, 162 (2012) (citations omitted). To demonstrate ineffective assistance of counsel in the context of plea negotiations, "a defendant must show the outcome of the plea process would have been different with competent advice." Id. at 163 (citing Missouri v. Frye, 556 U.S. 134, 148 (2012)). Specifically, a defendant "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . . , that the court would have accepted its terms, and the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 164.

Petitioner claims that counsel told him that the mandatory minimum sentence he faced was 120 months, when it was actually 180 months. Petitioner cites a Motion to Continue Trial Date filed by his counsel that stated the mandatory minimum sentence was 120 months as proof of counsel's misunderstanding. Petitioner alleges that this incorrect information affected his plea negotiations, as he claims he would have considered and even accepted a plea deal of eight to ten years had he known the mandatory minimum was 180

4

months. Instead, he rejected the offer, as he believed the mandatory minimum sentence was 120 months.

In response, the Government notes that Petitioner was informed of the mandatory minimum sentence at his initial appearance with before Judge Buchanan on December 18, 2017, and that counsel wrote Petitioner a letter that advised his federal sentencing guidelines would result in a sentence of fifteen to seventeen years in prison. The Government also argues that Plaintiff cannot show reasonable probability that he and the Court would have accepted any plea offers, as he rejected all offers that did not have a sixty-month cap.

Petitioner fails to sufficiently show a reasonable probability that he and the Court would have accepted the Government's plea offer. Even if the Court were to assume that counsel provided Petitioner incorrect information about the mandatory minimum he faced, Petitioner only alleges that he "would have considered and even accepted" a plea offer had he known that the mandatory minimum was fifteen years. However, this statement is hardly definitive as to Petitioner's intention to accept a plea offer. Instead, the only objectively evidence regarding the plea negotiations is that Petitioner consistently rejected any plea offer that did not include a five-year cap. Without more, Petitioner fails to provide any objective evidence to demonstrate a reasonable probability that he would have accepted the

5

Government's plea offer. See Tabb v. Cabell, 2019 WL 1104679, at *10 (E.D. Va. Feb. 8, 2019) (noting that to demonstrate a reasonable probability that the defendant would have accepted the plea, he is required to present some credible, non-conclusory evidence that he would have accepted the proffered plea had he been properly advised) (quoting Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003)); Berry v. United States, 884 F. Supp. 2d 453, 463 (E.D. Va. 2012) ("As multiple courts have recognized, 'after the fact testimony concerning [a defendant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer.'") (quoting Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991)).

Second, Petitioner claims that counsel made unfulfilled promises to the jury in his opening statement. In reviewing a tactical decision made by counsel during trial, a petitioner must show that it "was so unreasonable . . . that it amounted to a deprivation of an attorney who acted within 'the range of competence demanded of attorneys in criminal cases,'" as courts "are reluctant to second guess the tactics of trial lawyers." Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir. 1977) (citations omitted). Since "counsel does not know at the time of the opening statement that he will not produce the promised evidence, an informed change of strategy in the midst of trial is

6

'virtually unchallengeable.'" Turner v. Williams, 35 F.3d 872, 904 (4th Cir. 1994) (quoting Strickland, 466 U.S. at 690).

Here, the decisions of Petitioner's counsel were reasonable. Petitioner's counsel stated in an affidavit that he presented the opening statement based on what he anticipated M.M. would testify based on his investigation prior to trial, and he had a good faith basis to believe M.M.'s testimony would conform to the statements he presented during his opening statement. Some of those promises included anticipated testimony that was ultimately excluded due to the Court's ruling on a motion in limine, which was decided after the opening statement was given. Counsel could not have known how the Court would rule on that motion, and it is reasonable that counsel would accordingly alter the trial strategy from the promises provided during the opening statement. Additionally, Petitioner has not shown a reasonable probability that the outcome of the proceeding would have been different had Petitioner's counsel not made the alleged unfulfilled promises in the opening statement.

Third, Petitioner claims that counsel failed to properly investigate and interview Byrd and call him as a witness at trial. Similar to above, "complaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely

7

speculative." Day v. Quarterman, 566 F.3d 527, 538 (5th Cir. 2009) (citing Bray v. Quarterman, 265 F. App'x 296, 298 (5th Cir. 2008)).

In United States v. Vargas, 920 F.2d 167, 170 (2d Cir. 1990), the petitioner produced a short, typed affidavit purportedly signed by a co-defendant as evidence of ineffective assistance of counsel for failing to call the co-defendant as a witness at trial. The affidavit stated in conclusory fashion that the petitioner had no knowledge of the co-defendant's drug-related activities. The Second Circuit held that the affidavit was not persuasive in finding that the petitioner's trial counsel acted unreasonably in failing to call the co-defendant as a witness.

Petitioner has supplemented his filings with an affidavit reportedly signed by Byrd. The affidavit states the Byrd would have testified at trial that Petitioner's attorney never reached out to interview him; M.M. voluntarily chose to prostitute herself for money; M.M. was not forced, defrauded, or coerced into prostitution; Petitioner was not M.M.'s pimp; M.M. was never prevented from leaving and never had her phone taken from her; M.M. would call Petitioner to purchase cocaine; Petitioner never conspired with anyone to traffic anyone; and M.M. was not part of his conspiracy and was not a co-conspirator.

Similar to Vargas, this affidavit, which has not been authenticated, is not persuasive as to showing that Petitioner's attorney acted unreasonably in failing to call Byrd to testify at

8

trial. Perhaps most importantly, Petitioner's counsel was limited in his ability to investigate Byrd's likely testimony if he were to be called as a witness. Petitioner's counsel reached out to Byrd's counsel to attempt to interview Byrd, but that request was denied by Byrd's counsel. Even if the Court were to take Byrd's reported representations in the affidavit about how he would have testified at trial as true, Petitioner's counsel had no way to know that. When Byrd's counsel denied Petitioner's counsel the ability to speak further with Byrd, Petitioner's counsel could only anticipate Byrd's testimony based on the other information he had received. In that regard, Petitioner's counsel reasonably believed that the testimony from Byrd would likely have been inculpatory, as he received representations from the Government at the reverse proffer that Byrd pointed to Petitioner as part of the trafficking conspiracy.

Furthermore, even if the Court were to take the Byrd affidavit as true, Petitioner can still not demonstrate prejudice. Based on his prior statements to law enforcement, Byrd would have almost certainly been impeached if he had testified in accordance with the affidavit. It is possible that having a defense witness impeached in this manner could have weakened the defense's case before the jury more than not having the witness testify at all. See United States v. Terry, 366 F.3d 312, 318 (4th Cir. 2004) (finding that for witnesses that may not be viewed as credible,

9

"the jury could have decided that their testimony actually weakened the defense's case against conviction").

Lastly, Petitioner points to the failure to investigate Facebook message conversations between M.M. and another individual, J.M. As noted above, counsel's trial strategy decisions, such as whether to seek a continuance, is afforded significant deference. See Gaver v. United States, 2021 WL 4502809, at *10 (D. Md. Oct. 1, 2021) (citations omitted).

Petitioner's counsel subpoenaed the Facebook conversation between M.M. and J.M. on September 4, 2018, as Petitioner told his counsel that those messages would show that M.M. wanted to voluntarily prostitute herself. When counsel had not received the messages yet, he asked for, and was granted, a continuance for trial on September 17, 2018. Trial proceeded on November 14, 2018, and counsel claims his office never received any of the requested Facebook records. Petitioner argues that counsel should have asked for another continuance to allow for more time to receive the Facebook messages. However, it is hard to argue that Petitioner's counsel did not act reasonably here. Counsel already asked for one continuance in an attempt to give more time for Facebook to respond to the subpoenas. It is reasonable for counsel to proceed after having not received the messages over two months after sending the subpoenas. Trial cannot be continued indefinitely.

Petitioner similarly fails as it relates to prejudice. First, even if trial was again continued, there is no certainty that counsel would have ever received the Facebook messages. Second, there is also no guarantee that the Court would have continued the trial if asked, as the trial had already been continued three times at that point in the case. Third, if counsel had received the Facebook messages, there would have been hearsay concerns as to whether these out-of-court statements would have even been admitted as evidence. Fourth, even without the Facebook messages themselves, counsel was still able to cross-examine M.M. at trial about inconsistencies in her statements and about the Facebook messages. This is all to say that, even if counsel had sought a continuance of trial to allow more time to receive the Facebook messages, it is not reasonably probable that it would have changed the outcome at trial.

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to § 2255 is DENIED.

An appropriate Order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
September 6, 2024

11